IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Richard B. Taylor,           :

    Plaintiff,            :

  v.                         :    Case No. 2:11-cv-409

Michael J. Astrue,           :    JUDGE EDMUND A. SARGUS, JR.
Commissioner of Social Security,  Magistrate Judge Kemp

    Defendant.            :

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Richard B. Taylor, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. Those applications were filed on May 9, 2007, and alleged that plaintiff became disabled on July 22, 2004. He claims a disability based on high blood pressure, depression, and chronic joint pain.

After initial administrative denials of his claim, plaintiff was given a videoconference hearing before an Administrative Law Judge on March 3, 2010. In a decision dated March 11, 2010, the ALJ denied benefits. That became the Commissioner's final decision on March 31, 2011, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on July 19, 2011. Plaintiff filed his statement of specific errors on August 22, 2011. The Commissioner filed a response on October 27, 2011. No reply brief was filed, and the case is now ready to decide.

II. The Lay Testimony at the Administrative Hearing

Plaintiff's testimony at the administrative hearing is found at pages 28 through 43 of the record, with further testimony

beginning at page 57. Plaintiff, who was 56 years old at the time of the hearing and is a high school graduate, testified as follows.

Plaintiff's last job was as a courier for a company that delivered medical supplies. He was injured while performing that job. He had a job before that with a different courier company, which required lifting anywhere between ten and 150 pounds. The job also involved driving a large truck and much bending and stooping. He has worked as a telemarketer as well, and was actually working part-time at that job at the time of the administrative hearing. However, even working three hours a day at that job was taxing his capacity to work.

The primary reason that he cannot work relates to pain in his left arm and back, and pain in his right leg. He was not getting treatment for his back because he could not afford it. He believed he could stand for fifteen minutes at a time and he could walk only short distances. He could sit for fifteen or twenty minutes. His telemarketer job did allow him to stand periodically. He could lift a gallon of milk but not much more, and could bend a little bit but with pain.

Plaintiff also testified to having an ulcer, loss of blood, and kidney or bladder problems. He had surgery recently. He was also depressed about his situation. His pain affected his ability to concentrate. Finally, if he were to eat and drink normally, he would have to use the restroom two or three times an hour.

### III. The Medical Records

The medical records in this case are found beginning on page 250 of the administrative record. The records which are relevant to the ALJ's decision can be summarized as follows.

The records show that from 2004 to 2007 plaintiff had been treated for various conditions such as degenerative changes in

his ankle, some facial swelling, and hypertension. He did fall at work in 2004 and suffered contusions and a back strain. He had been taking Advil for pain as well as blood pressure medication.

On August 7, 2007, plaintiff underwent a consultative physical examination. The examination was positive for clicking in the right knee and pain in the right ankle, knee, and back. He had a full range of motion and his motor strength was normal. His gait was mildly uneven. He could lift 25 or 30 pounds. No other work-related impairments were noted. X-rays showed some scattered arthritic changes in his back. A state agency reviewer, Dr. Perencevich, though that plaintiff could perform essentially a full range of medium work.

Dr. Donaldson, a psychologist, performed a consultative psychological examination on August 24, 2007. He reported constant pain since his fall in 2004. He was working ten hours per week as a telemarketer. He was agitated during the interview. His affect was flat. He reported a diminished interest in activities, insomnia, fatigue, and a lack of concentration. He also had symptoms of anxiety. An anxiety disorder was diagnosed, as well as a mood disorder. Dr. Donaldson thought that plaintiff could deal adequately with simple job instructions but might be moderately impaired in his ability to do repetitive tasks. Other limitations were only mild, except for a moderate impairment in the ability to deal with ordinary work stress. His GAF was rated at 60-65. A state agency reviewer, Dr. Hoyle, concluded that plaintiff had some moderate limitations in his ability to deal with coworkers or the public and in dealing with changes in the work setting. He would also have moderate difficulties in maintaining concentration, persistence or pace. A subsequent reviewer, Dr. Pawlarczyk, made similar observations.

Plaintiff was admitted to the emergency room on October 16, 2007, with symptoms of back pain and blood in his urine. He exhibited some tenderness in his back and in his right knee. An acute urinary tract infection was diagnosed. Approximately two years later, a study found that he had a tumor in his bladder, as well as some kidney cysts. He underwent surgery to resect the tumor. It appears that the tumor was causing plaintiff to be anemic.

### IV. The Vocational Testimony

Ms. Rapant, a vocational expert, also testified at the administrative hearing. Her testimony begins at page 43. She noted that plaintiff had worked as a courier and as a telemarketer. Those jobs were either light or medium, and either unskilled or semi-skilled. She was asked questions about a hypothetical person who could work at the medium exertional level but who had a number of restrictions unrelated to lifting, carrying, standing, sitting or walking, and who also had some psychological restrictions. That person would also have to be permitted to wear some sort of bladder control garment. Ms. Rapant testified that such a person could not perform the courier job because it involved being around moving machinery, but he could do the telemarketing job. The same would be true if the person were limited in his ability to have personal contact (as opposed to telephone contact) with others. If the person were limited to unskilled work, he could not function as a telemarketer, but he could do other medium, unskilled jobs such as laundry worker or kitchen helper. Such jobs do not have strict production quotas.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 9 through 18 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured requirements of the Social Security Act through December 31, 2011. Next, he found that plaintiff had not engaged in substantial gainful activity from his alleged onset date of July 22, 2004 through the date of the decision, although he did work after that date. As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including chronic gastritis, duodenal ulcers, diverticulitis in colon and hemorrhoids, status post transurethral resection of bladder for non-invasive carcinoma, obesity, and degenerative lumbar changes. Additionally, he had non-severe impairments including hypertension, high blood sugar, right knee and ankle problems, an anxiety disorder, and a mood disorder. The ALJ also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform a limited range of medium work, with limits on his ability to climb ramps or stairs, to climb ladders, ropes or scaffolds, to balance, stoop, kneel, crouch, and crawl, and with the restriction that he not work around dangerous moving machinery or exposed heights. He would also experience limited interruptions from psychologically-based symptoms. Additionally, he would need a job which permitted him to wear a urinary bladder control garment, and which involved only occasional interpersonal interaction with the public. The ALJ accepted the vocational expert's testimony that someone with such limitations could perform plaintiff's past relevant work as a telemarketer. As a result, the ALJ concluded that plaintiff had not demonstrated an entitlement to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In his statement of specific errors, plaintiff raises the following issues.  First, he contends that the ALJ erred by finding that his anxiety and mood disorders and his ankle injury were not severe impairments.  Second, he argues that the medical evidence from treating sources concerning his disability was not evaluated properly.  Third, he asserts that his telemarketing job was not past relevant work.  Fourth, he claims that the hypothetical questions asked of the vocational expert did not properly incorporate all of his restrictions.  Fifth, he takes issue with the way in which the ALJ assessed his credibility. The Court generally reviews the administrative decision under this legal standard:

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court

would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Taking the issues in a slightly different order, the Court first determines that the issue concerning treating sources clearly lacks merit. It is true that the only treating sources in the record are either emergency room physicians or the surgeons who operated on plaintiff for his bladder tumor. It is equally true that none of them ever expressed any opinion either that plaintiff was disabled or that he suffered any specific limitations on his ability to perform work-related functions. The "treating physician" rule, 20 C.F.R. §404.1527(d), refers to "medical opinions" which deal with the "nature and severity of [the claimant's] impairment(s)...." There are simply no such opinions in this record as to the severity of plaintiff's impairments, let alone any opinions which are inconsistent with the residual functional capacity finding made by the ALJ. While the emergency room physicians' statements as to the nature of plaintiff's impairments, including the low back problems and some right knee and ankle abnormalities which they observed and treated, deserved some deference in terms of whether plaintiff actually has such impairments, it appears that the ALJ accepted the opinions on that subject. Overall, there is simply no basis on which to conclude that the ALJ did not accord proper deference to whatever opinions may be found in the emergency room records, and therefore there has been no violation of the "treating physician" rule.

Plaintiff's first claim about the ALJ's finding that his ankle injury and psychological impairments were not "severe" is also without merit, but for a different reason. There is little evidence in the record apart from plaintiff's own testimony to

suggest that the ankle injury has caused ongoing problems, and the issue of credibility is dealt with in more detail below. Further, there is nothing - not even the plaintiff's own testimony - indicating that this injury would interfere with his ability to perform the physical requirements of a telemarketing job, which he performed at the sedentary level with the option to sit or stand. Any error in regard to the ankle injury clearly had no effect on the ultimate outcome of the case and is therefore harmless, at most. See, e.g., Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)(errors which do not undermine the Court's confidence in the outcome of the case may be considered harmless).

The issue concerning plaintiff's psychological impairments is not quite so clear-cut. All of the reports about the severity of plaintiff's impairments suggested the presence of some moderate limitations. Both Dr. Pawlarczyk and Dr. Hoyle, the state agency reviewers, completed forms which, rather than indicating that plaintiff's mental impairments were not severe, stated that a residual functional capacity assessment was necessary. Dr. Donaldson also thought there were some moderate limitations in the areas of performing repetitive tasks (although that was primarily due to psychomotor slowness) and in dealing with work stress. The presence of these types of limitations can be expected to have an effect on a claimant's ability to perform work-related functions and are evidence of a severe impairment. See 20 C.F.R. §404.1520(c); Salmi v. Secretary of H.H.S., 774 F.2d 685, 691-92 (6th Cir. 1985).

The Commissioner does not directly defend the ALJ's decision to treat plaintiff's mood or anxiety disorders as not severe, and there is little in the way of explanation in the administrative decision for this result; in particular, the ALJ did not even acknowledge that all three of the mental health sources had noted

moderate impairments.  Rather, the Commissioner argues that this error is immaterial because the ALJ found other severe impairments and proceeded to the subsequent steps of the sequential evaluation process.

That position is correct to the extent that the ALJ properly assessed the limitations imposed by the impairments which were not deemed severe.  As the Court of Appeals noted in <u>Maziarz v. Secretary of Health & Human Services</u>, 837 F.2d 240, 244 (6th Cir. 1987), a case where a similar claim was made about a cervical condition deemed nonsevere, "[s]ince the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."  Thus, although the failure to deem these mental impairments severe is not necessarily grounds for reversal or remand, the question becomes whether the effect of these conditions was properly taken into account at step four of the process when the ALJ determined plaintiff's mental residual functional capacity.  <u>See Isaacs v. Astrue</u>, 2009 WL 3672060, *9 (S.D. Ohio November 4, 2009)("the 'critical issue' for the reviewing Court under these circumstances is whether the ALJ's RFC finding is supported by substantial evidence").

At the RFC step of the process, the ALJ found that plaintiff was able to perform detailed work and could maintain a 40-hour work week with only limited interruptions from psychologically-based symptoms, but would need to avoid most physical interaction with the public.  The ALJ neither mentioned nor discussed any of the psychological reports in the section of the administrative decision dealing with residual functional capacity, but indicated earlier in the decision that "the residual functional capacity

assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 14). That was, of course, a determination that under the four "paragraph B" criteria, plaintiff was, at most, mildly impaired. As noted, that determination is inconsistent with the three reports in the record, which are the only evidence concerning mental impairments; Dr. Hoyle found one area of the "B" criteria where there were moderate, rather than mild, limitations, and Dr. Pawlarczyk found two. Further, it is not at all clear how the ALJ reached his determination that plaintiff's inability to be around people related to physical proximity as opposed to dealing with the public by telephone. It is true that Dr. Hoyle and Dr. Pawlarczyk believed that plaintiff could carry out detailed instructions, so that portion of the mental RFC assessment finds support in the record, but they also both concluded that he had moderate limitations on his ability to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods, and to interact appropriately with the general public. (Tr. 298-99). The finding that plaintiff could not have more than occasional physical contact with the public does not address these issues in any way, and they were not addressed with the vocational expert in the context of plaintiff's being able to do his past relevant work other than in a brief reference to the fact that any type of interruption from psychologically-based symptoms would be "limited." That statement was not further defined. Given the total absence of any explanation why the ALJ seems to have rejected the views of all three mental health professionals who either examined plaintiff or reviewed his

records, and the absence of any countervailing evidence which the ALJ might have relied on, even though he did not do so explicitly, the Court cannot conclude that his decision on the issue of mental residual functional capacity is supported by substantial evidence. When an ALJ errs in "assessing plaintiff's ... impairment at step two of the sequential evaluation process and in assessing plaintiff's RFC ... th[e] matter should be remanded for further proceedings." Isaacs, supra, at *11, citing Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994).

The Court will briefly address plaintiff's other contentions should similar issues arise when the case is considered on remand. Any issue concerning the accuracy of the hypothetical questions posed to the vocational expert is now moot since the Court has determined that the RFC used in those questions does not find substantial support in the record. As far as whether telemarketing constituted past relevant work, the Commissioner cites to evidence that plaintiff's earnings from this job exceeded the level required for substantial gainful activity for at least one year (2004), and at this point plaintiff has not made any cogent argument to the contrary.

Finally, with respect to the credibility determination, the ALJ did cite to relevant evidence as far as the medical records were concerned in arriving at a physical RFC which discounted plaintiff's testimony; and while the absence of extensive medical records, apparently due to plaintiff's inability to afford treatment, is a factor to be taken into account, there is no indication that the ALJ failed to do so. None of the findings of either the emergency room doctors or the consultative examiner suggested extensive medical problems, and the ALJ legitimately considered this evidence in making an overall decision as to plaintiff's ability to do the physical demands of work. The ALJ

also made reference to plaintiff's work history and his activities of daily living.  A reasonable person could have reached the same conclusion on this record, and that is enough to sustain the credibility determination made here, even if the decision is somewhat short on a detailed examination of the factors set forth in 20 C.F.R. §404.1529.  See, e.g., Cross v. Commissioner of Social Sec., 373 F.Supp.2d 724, 733 (N.D. Ohio 2005)(noting that "[a]n ALJ in a unified statement should express whether he or she accepts the claimant's allegations as credible and, if not, explain the finding in terms of the factors set forth in the regulation [footnote omitted]... but [t]he ALJ need not analyze all seven factors identified in the regulation ..."). Although the Cross court also stated that the ALJ "should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence," id., and that the way in which the ALJ articulated those findings in that case did not "represent[] a model that future disability decisions should emulate," the court still found it sufficient because the court was able to determine that all relevant evidence was considered and that evidence supported the credibility finding which was made.  The same is true here.  Thus, none of these three assignments of error provide a basis for remand which is independent of the error made by the ALJ concerning the mental residual functional capacity assessment, although on remand the ALJ is free to reconsider any or all of these matters in the light of the current record, or the record as supplemented, should that occur.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner of Social Security pursuant to 42 U.S.C. §405(g), sentence four.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge